Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| ÁNGEL BURGOS OLIVERA, ET AL.<br><br>Apelantes<br><br>v.<br><br>SUPERN: SAMUEL ARROYO SERRANO, D.C.R., ET AL<br><br>Apelados | TA2026AP00263 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso número: AR2026CV00193<br><br>Sobre: *Injunction* |
|---|---|---|

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

## SENTENCIA

En San Juan, Puerto Rico, a 14 de abril de 2026.

Comparecen, por derecho propio, los apelantes, Ángel Burgos Olivera y los demás codemandantes de epígrafe, y nos solicitan que revoquemos la *Sentencia* emitida y notificada el 6 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Arecibo. Mediante el dictamen apelado, el foro primario desestimó la solicitud de *injunction* instada por los apelantes.

Por los fundamentos que se exponen a continuación, se confirma la *Sentencia* apelada.

### I

El 30 de enero de 2026, Ángel Burgos Olivera y los otros 33 codemandantes de epígrafe (en conjunto, los apelantes) presentaron por derecho propio una *Demanda* sobre sentencia declaratoria e *injunction* preliminar y permanente, en contra de la Oficina del Superintendente (el Superintendente).[1] Cabe destacar que los

---

[1] Entrada núm. 1 del caso núm. AR2026CV00193 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

apelantes están confinados en la institución correccional 216 en Sabana Hoyos.

En esencia, alegaron que, el 13 de noviembre de 2025, en el edificio 1 de la institución correccional, donde residen varios de los apelantes, se llevó a cabo un operativo. Como resultado, el día 18 del mismo mes y año el Superintendente les notificó la suspensión de privilegios en calidad de *medida de seguridad*, de conformidad con la Regla 9 del Reglamento Núm. 9221 de 8 de octubre de 2020.[2]

De conformidad con la comunicación divulgada a esos fines, los privilegios a suspenderse serían los siguientes: recreación activa, comisaría (excepto artículos de higiene personal), entrada de comida especial (*fast food*), paquetes, televisor, participación en actividades internas y externas, correspondencia (excepto legal) y visitas. Según la comunicación escrita, la medida de seguridad se tomó debido a que se ocupó contrabando ilegal. Así, luego de celebrada una vista administrativa, el 25 de noviembre de 2025, el Superintendente les notificó la extensión de la suspensión de los referidos privilegios, en calidad de *medida de seguridad*, por treinta (30) días calendario.

Según alegado, por hechos ocurridos el 22 de diciembre de 2025 en el edificio 3, donde reside otro grupo de los apelantes, ese mismo día, el Superintendente les notificó la suspensión de los mismos privilegios. Según la comunicación, la medida de seguridad se tomó debido a que, en el operativo llevado a cabo en esa ocasión, se ocupó contrabando ilegal. Posteriormente, y tras la celebración de una vista administrativa, el día 30 del mismo mes y año, el Superintendente les notificó la extensión de la suspensión de privilegios, en calidad de *medida de seguridad*, por treinta y cinco (35) días; es decir, hasta el 4 de febrero de 2026.

---

[2] A este reglamento se le conoce como el *Reglamento para establecer el proceso disciplinario de la población correccional.*

Como remedio, solicitaron del foro *a quo* que ordenara el cese y desista de la aplicación de la Regla 9 del Reglamento Núm. 9221. Asimismo, mediante la solicitud de sentencia declaratoria, requirió que el foro primario declarase inconstitucional la mencionada disposición reglamentaria.

Tras evaluar la *Demanda*, el 6 de febrero de 2026, el foro primario emitió y notificó la *Sentencia* apelada. Mediante esta, desestimó la causa de acción, tras razonar que carecía de jurisdicción. Como fundamento, el foro *a quo* aludió a la doctrina de agotamiento de remedios administrativos y expresó considerar evidente que "existe cierto proceso de querellas del cual no tenemos un récord completo o ningún récord en cuanto a alegaciones específicas contra cada demandante por la institución".[3] En específico, el foro *a quo* concluyó lo siguiente:

> [E]l Tribunal no aprecia razón o motivo de peso para arrestar por vía de excepción la doctrina de deferencia a la agencia administrativa de agotar remedio administrativo. Todo lo contrario, aprecia que el mismo no se ha evidenciado, no tenemos el beneficio de una determinación final para atender la falta de un razonamiento apropiado y por ende carecemos de jurisdicción o justificación para intervenir según presentados los hechos y alegaciones en la demanda.[4]

En desacuerdo, el 11 de marzo de 2026, los apelantes acudieron ante este Foro mediante el recurso de apelación de epígrafe, en el que adujeron que el foro primario cometió los siguientes errores:

> El Tribunal de Primera Instancia debió emitir los emplazamientos contra todos los demandantes ya que es una exigencia del Debido Proceso de ley, y esto debe contar con la autoridad judicial.
>
> El Tribunal [de Primera Instancia] debió atender el recurso en sus méritos ya que los anejos incluidos en el recurso son determinaciones finales y firmes de la agencia y no existe ningún proceso administrativo para impugnar dicha medida de seguridad.
>
> Los Tribunales existen para derivar obstáculos hacia el camino de lo justo, y el Estado tiene el deber ministerial de

---

[3] *Sentencia* apelada, pág. 1. Entrada núm. 4 del caso núm. AR2026CV00193 del SUMAC.
[4] *Sentencia* apelada, pág. 3. Entrada núm. 4 del caso núm. AR2026CV00193 del SUMAC.

velar por los derechos de los ciudadanos, aunque estos estén confinados.

La regla 9 del reglamento 9221 es inconstitucional de su fas y aplicación ya que esta no provee a quien está siendo adversamente afectado oportunidad alguna de defenderse, ni impugnarla ante un juzgador imparcial, lacerando así el debido proceso de ley.

El Tribunal Supremo de los Estados Unidos ha determinado que las garantías del debido proceso de ley que se le ha reconocido a las personas confinadas aplican cuando la medida a imponerse resulte atípica o imponga condiciones, más duras y onerosas que las que de ordinario prevalecen en el penal. Que de ordinario en el ámbito federal no hay tal medida de seguridad como la tomada por el [Departamento de Corrección y Rehabilitación] a través de la regla 9 del reglamento 9221.

Luego de una evaluación preliminar del recurso, el 13 de marzo de 2026 emitimos una *Resolución* que fue notificada el día 16 del mismo mes y año. Mediante esta, le concedimos a la Oficina del Procurador General (Procurador) un término de veinte (20) días para expresarse sobre el recurso.

En cumplimiento de nuestra orden, el 1 de abril de 2026, el Procurador presentó una *Comparecencia Especial.* En esencia, nos solicitó que relevemos al Estado de comparecer en este caso, debido a que nunca se le diligenció emplazamiento alguno, razón por la cual el foro *a quo* no llegó a adquirir jurisdicción sobre su persona.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso ante nos.

**II**

**A**

La jurisdicción es el poder o autoridad que posee un tribunal para considerar y decidir un caso o controversia. *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. ELA*, 211 DPR 521, 529 (2023); *MCS Advantage, Inc. v. Fossas Blanco*, 211 DPR 135, 144 (2023); *Cobra Acquisitions, LLC. v. Municipio de Yabucoa* 210 DPR 384, 394 (2022). Nuestro Tribunal Supremo ha reiterado que los tribunales debemos ser fieles guardianes de nuestra jurisdicción y en que no tenemos discreción para asumir

jurisdicción allí donde no la hay. Es decir, la jurisdicción incide directamente sobre el poder mismo para adjudicar una controversia. *Allied Management Group, Inc. v. Oriental Bank,* 204 DPR 374, 386 (2020); *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 882 (2007). En consecuencia, les corresponde a los foros adjudicativos examinar su propia jurisdicción. *S.L.G. Szendrey-Ramos v. F. Castillo.,* supra, pág. 883.

La falta de jurisdicción tiene las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede este arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio. S.L.G. Solá-Moreno v. Bengoa Becerra,* 182 DPR 675, 682 (2011). Por tanto, cuando este Foro carece de jurisdicción, "procede la inmediata desestimación del recurso apelativo [...]". *S.L.G. Szendrey-Ramos v. F. Castillo,* supra, pág. 883.

**B**

La Sección 4.2 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9672, dispone que:

> **Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones**, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 9655 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. [...]. (Énfasis nuestro).

De este modo, la doctrina de agotamiento de remedios administrativos está recogida en la citada sección. Dicha doctrina constituye, junto a la de jurisdicción primaria,[5] una norma de abstención judicial que pretende lograr que las reclamaciones sometidas inicialmente a la esfera administrativa lleguen al foro judicial en el momento adecuado. *Igartúa de la Rosa, et als. v. A.D.T.*, 147 DPR 318, 331 (1998). Su objetivo principal es evitar una intervención judicial innecesaria y a destiempo que tienda a interferir con el cauce y desenlace normal del procedimiento administrativo. *Delgado Rodríguez v. Nazario de Ferrer*, 121 DPR 347, 355 (1988).

Así, pues, la doctrina de agotamiento de remedios administrativos constituye un requisito jurisdiccional que no debe ser soslayado, a menos que se configure alguna de las limitadas excepciones que, al amparo de nuestro ordenamiento jurídico, justifican el trámite administrativo. *Igartúa de la Rosa v. A.D.T.*, supra, pág. 331. A tenor con ello, la Sección 4.3 de la LPAU dispone las excepciones a la referida doctrina:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.

3 LPRA sec. 9673.

---

[5] Sobre la doctrina de jurisdicción primaria, el Tribunal Supremo dispone que esta se utiliza para determinar qué foro tiene jurisdicción original para dilucidar una controversia, si el judicial o el administrativo, en aquellos casos en que haya incertidumbre al respecto, de acuerdo con las funciones gubernamentales que la Asamblea Legislativa les delega a algunas agencias administrativas. Véase, *Rodríguez Rivera v. De León Otaño,* 191 DPR 700, 709 (2014).

# C

La Regla 9 del Reglamento Núm. 9221 de 8 de octubre de 2020, conocido como *Reglamento para establecer el proceso disciplinario de la población correccional*, permite al Departamento de Corrección y Rehabilitación suspenderle privilegios a los confinados como una **medida de seguridad**, y no como una **medida disciplinaria**. La referida disposición establece lo siguiente:

## SUSPENSIÓN DE PRIVILEGIOS POR MEDIDA DE SEGURIDAD

1. El Superintendente de la institución correccional podrá suspender los privilegios, sin celebración de vista administrativa, por un periodo de tiempo que no exceda a diez (10) días calendarios, en aquellas circunstancias que atenten contra la seguridad institucional. El Superintendente no podrá extender el término expresamente dispuesto en este inciso. Bajo ninguna circunstancia, esta disposición podrá ser utilizada por el Superintendente de la institución correccional como medida disciplinaria.

2. Queda prohibida la cancelación del privilegio de visita a un grupo, unidad de vivienda, edificio o institución como medida disciplinaria. Sin embargo, esto no impedirá la suspensión de este privilegio cuando existan otras razones que no sean de índole disciplinario que así lo requieran y que estén en total acorde con las circunstancias específicamente establecidas para afianzar la seguridad. En estos casos, deberá entenderse que la suspensión de privilegios responde estrictamente a una medida de seguridad y no a una medida disciplinaria.

3. El Superintendente deberá notificar por escrito a la Oficina de Asuntos Legales la acción tomada dentro del próximo día laborable de haber tomado la acción. El Director de la Oficina de Asuntos Legales o su representante, referirá el asunto a la Oficina de Investigaciones del Sistema Correccional (OISC). La investigación será conducida por la Oficina de Investigaciones del Sistema de Correccional (OISC), con el propósito de determinar si existe justa causa para extender la suspensión de privilegios por razones de seguridad. Los privilegios podrán ser suspendidos por razones de seguridad, bajo una de las siguientes circunstancias:

   a. En casos de motín, fuga, disturbio, su tentativa o cualquier otra actividad o evento que ponga en riesgo la seguridad, la tranquilidad o el funcionamiento institucional. Esto incluye, pero sin limitarse a, cualquier amenaza contra la integridad física o la propiedad de un miembro de la población correccional, o cualquier otra persona, o contra la seguridad de la institución correccional.

   b. Cuando ocurra una agresión a un miembro de la población correccional y la misma sea ejecutada por seis (6) o más miembros de la población correccional.

     c. Cuando un módulo o unidad de vivienda de la institución correccional se niegue o se resista a someterse a las pruebas de detección de sustancias controladas, alcohol o cualquier otra prueba que se utilice para estos propósitos o impida que pueda llevarse a cabo dicha prueba.

     d. Cuando ocurran hallazgos de cualquier contrabando peligroso, tal como armas de fuego, sustancias controladas, artefactos explosivos o cualquier otro material prohibido por ley o reglamento.

4. La Oficina de Disciplina de Confinados calendarizará una vista administrativa que será presidida por un Oficial Examinador con el propósito de determinar la existencia de justa causa para extender la aplicación de la medida de seguridad, así como la cantidad de días por lo que se extenderá la misma. Dicha vista será celebrada antes del cumplimiento de los diez (10) días calendarios de tomada la acción o medida de seguridad. De lograrse el cese de la circunstancia que originó que se afectará la seguridad institucional antes de cumplirse el máximo de diez (10) días autorizados para la aplicación, el superintendente, deberá de inmediato dejar sin efecto la medida impuesta, notificando su acción a la Oficina de Disciplina de Confinados.

A la luz de la normativa antes expuesta, procedemos a disponer del caso ante nuestra consideración.

**III**

Esencialmente, mediante los señalamientos de error formulados, los apelantes cuestionan que el foro primario desestimara la *Demanda* de epígrafe sobre sentencia declaratoria e *injunction*. Sin embargo, tras evaluar el recurso, concluimos que el dictamen apelado es correcto en derecho. Ello, debido a que el foro *a quo* carecía de jurisdicción sobre la materia para emitir un *injunction* con el propósito de dejar sin efecto la suspensión de privilegios que les fuera impuesta, en calidad de medida de seguridad. Lo anterior, en virtud de las doctrinas de jurisdicción primaria y agotamiento de remedios administrativos. Veamos.

Debemos comenzar por resaltar que las misivas mediante las cuales el Superintendente notificó a la población correccional la suspensión de privilegios como medida de seguridad no son el resultado de algún proceso en el que se adjudique derecho alguno. En particular, tampoco resultan de la adjudicación de una solicitud

de remedio administrativo interpuesta, de conformidad con el Reglamento Núm. 8583 de 4 de mayo de 2015, conocido como *Reglamento para atender las solicitudes de remedios administrativos radicadas por los miembros de la población correccional.*

En el caso de epígrafe, hay que destacar que no surge del expediente que los apelantes iniciaran y agotaran el trámite administrativo que se contempla en el Reglamento Núm. 8583. De cualquier modo, es importante resaltar que el recurso extraordinario de *injunction* no constituye la herramienta apropiada en derecho para impugnar una medida de seguridad impuesta conforme a las disposiciones del Reglamento Núm. 9221.[6] En esos casos, debido a que la imposición de estas medidas constituye actuaciones que inciden, tanto sobre el bienestar físico y mental de los miembros de la población correccional, como sobre su plan institucional, estas se encuentran bajo el ámbito de jurisdicción primaria de la División de Remedios Administrativos (DRA) del Departamento de Corrección. Regla VI(1)(a) del Reglamento Núm. 8583.

De este modo, una vez el miembro de la población correccional insta una *Solicitud de Remedio Administrativo* ante la DRA y esta es debidamente adjudicada, la sección XIV(4) del Reglamento Núm. 8583 dispone que un Coordinador cuenta con quince (15) días, contados a partir de la fecha de presentación de una solicitud de reconsideración oportuna, para informarle al miembro de la población correccional si la acoge. Una vez el Coordinador notifica su determinación de acoger la solicitud de reconsideración, la Regla XIV(4) dispone que cuenta con un término de treinta (30) días laborables para emitir una *Resolución en Reconsideración.* Así, si el referido dictamen le resulta adverso al miembro de la población

---

[6] Nótese que, de conformidad con la Regla 57.3(b) de Procedimiento Civil, entre los criterios que el foro primario debe considerar a la hora de expedir una orden de *injunction*, se encuentran "[...] la inexistencia de un remedio adecuado en ley". 32 LPRA Ap. V, R. 57.3(b).

correccional, *entonces* puede recurrir de este ante este foro apelativo intermedio, y no ante el Tribunal de Primera Instancia, mediante un recurso de revisión judicial. Véase, Regla XV del Reglamento Núm. 8583.

En contraposición a lo dispuesto en el Reglamento Núm. 8583, una medida de seguridad impuesta al amparo de la Regla 9 del Reglamento Núm. 9221, por su naturaleza, es una actuación administrativa, y no cuasi judicial. Es decir, que consiste en una medida profiláctica de seguridad, que no requiere adjudicar la responsabilidad individual de confinado alguno. Subrayamos que, según surge de la Regla 2 del Reglamento Núm. 9221, el Departamento de Corrección y Rehabilitación aprobó el Reglamento Núm. 9221, de conformidad con la facultad que le delegó la Asamblea Legislativa en los Artículos 5[7] y 7 del Plan de Reorganización Núm. 2-2011.[8]

En virtud de lo anterior, el foro judicial se encuentra impedido de pasar juicio, mediante la expedición de un recurso extraordinario de *injunction*, sobre la corrección o adecuacidad de suspender privilegios a la población correccional, en calidad de medida de seguridad. Consecuentemente, es forzoso concluir que el foro *a quo* actuó correctamente al desestimar la *Demanda* de epígrafe.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

---

[7] "El Departamento tendrá las siguientes funciones, facultades y deberes: [...] c) estructurar la política pública correccional de acuerdo con este Plan y **establecer directrices programáticas y normas para el régimen institucional**; [...]". 3 LPRA Ap. XVIII, Art. 5. (Negrillas suplidas).

[8] "El Secretario tendrá entre otras, las siguientes funciones, facultades y deberes: [...] aa) adoptar, establecer, desarrollar, enmendar, derogar e **implementar reglas**, **reglamentos**, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, **a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela**, **así como los programas y servicios**; [...]". 3 LPRA Ap. XVIII, Art. 7. (Negrillas suplidas).

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones